*347 OPINION OF THE COURT
Lawrence E. Kahn, J.
This CPLR article 78 proceeding seeks to challenge certain regulations adopted by the State Hospital Review and Planning Council (SHRPC) and approved by the Commissioner of Health of the State of New York. The challenged regulations are found in 10 NYCRR part 405 and establish minimum operating standards for hospitals. The petition pleads 14 separate causes of action which collectively seek to invalidate all or specific portions of the new part 405 regulations. Respondents have answered and set forth various affirmative defenses, including a Statute of Limitations defense. On the return of the petition, the court granted the motion for amicus curiae status to the Committee of Interns and Residents, a labor organization formed for the purpose of representing physicians employed as interns, residents and fellows in hospitals and health care facilities.
On or about August 18, 1987, a notice of proposed rule making was filed with the Secretary of State and thereafter published in the State Register. The new regulations, as finally adopted, contain substantial amendments of the minimum operating standards for hospitals and represent a significant attempt to change the manner in which health care is delivered in the State of New York. Central to the new regulations are the substantial limits placed on the hours which hospitals may require its postgraduate doctors to work.
At oral argument counsel for petitioners went to great lengths to impress upon the court that the petition seeks no relief concerning the wisdom of the new regulations, and indeed in a purely academic sense, he is correct. It is not for this court to substitute its judgment concerning the necessity for nor the benefits hoped to be gained from implementation of these major health care changes.
Petitioners’ first cause of action asserts that the regulations are arbitrary, capricious and an abuse of discretion in that they require employment of additional personnel in numbers which exceed the available labor supply to such an extent that compliance is impossible. In support of this allegation they have submitted a laundry list of various positions, the purported number of available graduates and employable persons and conclude that the new mandates can only be met by hiring additional staff which are unavailable from the labor pool. This argument is not supportable and may not be *348 utilized to invalidate the challenged regulations. In addition to hiring additional personnel, the new staffing requirements may be complied with by restructuring schedules and implementation of hospital-specific procedures.
The petitioners have not met their burden of showing that the proposed standards are arbitrary or capricious on a Statewide basis, or that there will be a universal inability to comply. This is particularly true when petitioners seek a prospective declaration that compliance, in any shape or form is impossible. Should a specific hospital be charged with specific violations of the new regulations, it may have the right to come to court and litigate the issue of compliance. However, in the absence, of an actual controversy with respect to the issue of noncompliance, the first cause of action must be dismissed. (Matter of Starrs v Tully, 67 AD2d 784.)
Petitioners’ second cause of action seeks to invalidate the regulations upon the allegation that the SHRPC was improperly constituted on June 9, 1988 when it recommended approval of part 405. It asserts that certain members of the Council were not technically qualified to sit and that therefore a quorum was lacking. Same shall be dismissed as barred by the applicable four-month Statute of Limitations. Any such cause of action accrued on the aforesaid date of the adoption of the new regulations. "Inasmuch as consideration of possible detrimental effects of this action should have been given at the earliest possible time * * * the time to complain * * * was within four months of the date of the enactment” (Matter of Save the Pine Bush v City of Albany, 70 NY2d 193, 203).
A similar result must be reached with respect to petitioners’ 12th cause of action which asserts that the provisions of the State Administrative Procedure Act were violated in the adoption of the part 405 regulations. These regulations were filed on August 11, 1988 with the Secretary of State. Any right to challenge the regulations on procedural grounds accrued on said date. Four months having elapsed prior to commencement of this litigation, that cause of action is also time barred. (Matter of Save the Pine Bush v City of Albany, supra.)
Petitioners’ 13th cause of action asserts that the new part 405 regulations must be invalidated in that no timely rate appeal process is available to remedy any deficiencies for *349 reimbursements which might be claimed but unpaid. Again, this allegation presents no present case or controversy with respect to any specific hospital. Rather, it is a generalized allegation of a concern which may or may not become viable at some future date. As such, it states no grounds for relief in that petitioners have suffered no present damages (see, New York Pub. Interest Research Group v Carey, 42 NY2d 527).
Petitioners’ 14th cause of action asserts that 10 NYCRR 405.4 effectively limits the education and training of graduate medical trainees and therefore exceeds the authority of the Commissioner of Health to implement such a regulation. The petition asserts that such limitations on education and training of graduate medical personnel rests within the exclusive authority of the Department of Education and Board of Regents. This assertion is without merit. Any effect on postgraduate education or training which may be derived through working in excess of 100 hours per week is tangential at best and exceedingly speculative. Section 2800 of the Public Health Law affords the Commissioner of Health broad authority to implement policies and procedures to ensure the provision of quality medical care to the residents of this State. Placing reasonable restrictions on the hours of work which may be required of residents, interns and fellows is within this mandate. (Matter of Fritz v Huntington Hosp., 39 NY2d 339.)
Finally, the court has considered the relief requested by paragraph (4) of petitioners’ "wherefore” clause and shall decline to grant same. The "remaining causes of action” alluded to therein appear to be an attempt of the widest parameters to find some infirmity with the newly promulgated regulations. To the extent necessary, those causes of action shall be dismissed without prejudice to any relief which may be appropriate upon commencement of further litigation which properly pleads a cause of action justiciable in nature and ripe for review. (See, New York Pub. Interest Research Group v Carey, 42 NY2d 527, supra.) Petitioners’ request that Commissioner Axelrod be required to develop "appropriate written methodologies, approved by the Court with the cooperation of Petitioners”, etc., is patently beyond the purview of the judiciary. "[C]ourts do not normally have overview of the lawful acts of appointive and elective officials involving questions of judgment, discretion, allocation of resources and priorities” (Matter of Lorie C., 49 NY2d 161,171).
*350 In essence, the relief petitioners seek falls within the penumbra of the "political question” doctrine (see, Jones v Beame, 45 NY2d 402, 408). In such instances, judicial deference to a coordinate, coequal branch of government has repeatedly been sustained.